## Bruntrager's Estate.

*Wills—Construction—Direction to pay building and loan association dues from income—Illegal accumulations—Act of April 18, 1853.*

1. A direction in a will to pay dues upon testator's building and loan association stock from the income of the residuary estate constitutes an accumulation of income forbidden by the Act of April 18, 1853, § 9, P. L. 503, 507, and is void.

*Trusts for special purpose—Failure of purpose—Termination of trust.*

2. A trust created for a special purpose and evincing no clear intent to continue it for any other purpose terminates when the purpose has been accomplished and nothing remains for the trust to act upon. Where, therefore, the main purpose of the trust is to increase the value of the *corpus* by the addition of income for a series of years in violation of the act, the trust terminates, notwithstanding the existence of subordinate provisions for substitutionary gifts and spendthrift clauses.

Exceptions to adjudication. O. C. Phila. Co., Oct. T., 1922, No. 439.

The testator died March 14, 1922, leaving a will duly admitted to probate, the relevant provisions of which were as follows:

"Item. All the rest, residue and remainder of my estate, real, personal and mixed, whatsoever and wheresoever, I give, devise and bequeath unto my trustee hereinafter named, In Trust, Nevertheless, to invest and keep invested in securities as are legal securities and such First mortgages as may be deemed by the trustee to be proper, and after deducting the expenses incident thereto, to pay over the income therefrom to the trust estate, the said trust estate to be held in trust for Louis C. Bruntrager, Frank Bruntrager, George J. Bruntrager and Christian F. Bruntrager, until the last share of building and loan association stock which I have now standing in my name matures, or in the event the above mentioned last share of building and loan association stock, or any of my building and loan association stock has not matured at the expiration of eleven years from the date of my death, then the said trust is to terminate and the trustee to pay over the principal and accumulated interest to my four sons above mentioned, Louis C. Bruntrager, Frank Bruntrager, George J. Bruntrager and Christian F. Bruntrager, or the issue of any of them who may be then deceased, in equal shares, so however that the issue of any such deceased child, if more than one person, shall take equally among them such share only as their parent would have taken if living. Should [any of] my said sons die without leaving issue him surviving, I order and direct that his share of the estate shall be paid over to the Residuary Estate and be distributed equally between my surviving sons and children of deceased son or sons in equal shares, so, however, that the issue of any deceased son or sons, if more than one person, shall take equally among them only such share that their parent would have taken if living.

"Item. I order and direct that the income and principal of my estate which is to be paid to my children or their survivors shall not in any manner or under any form of proceeding be subject to or liable for present or any future debts, contracts or engagements of my sons or their survivors, and the same shall not be by any of my said sons, or their survivors or any of them, appropriated, disposed of, parted with by anticipation or be subject to execution, attachment, or sequestration for any debts, or liabilities of my sons or their survivors.

"Item. I direct my trustee to pay from the income derived from the said estate the necessary dues and maintenance of the said building and loan shares, and in the event at any period the said income is not sufficient therefor, to sell such securities or mortgage such property as may be necessary to

maintain the said building and loan shares and keep them at all times fully paid."

It was contended on behalf of testator's sons that the above provisions created an illegal accumulation, in violation of the Act of April 18, 1853, § 9, P. L. 503, 507, and the request was made that the trust be declared void and terminated, and that distribution of the assets in the hands of the accountant be made among testator's sons.

The auditing judge sustained the trust on the ground that the direction to pay building and loan association dues was equivalent to a direction to pay a debt and analogous to the principle laid down in Spring's Estate, 216 Pa. 529, 534, i. e., that the accumulation was in the nature of a withholding of the income temporarily and for the purpose of providing a fund in the interest of the judicious management of the trust. To this ruling exceptions were taken.

*Benjamin B. Hoar*, for exceptant; *Raymond A. White, Jr.*, contra.

GEST, J., March 29, 1923.—We are of opinion that the direction in the will to pay, from the income of the residuary estate, the dues upon the testator's building and loan association stock constitutes an accumulation of income which is forbidden by the Act of April 18, 1853, § 9, P. L. 503, 507, 4 Purd. 4036. Assuming that the dues are debts of the testator, an accumulation of income could not lawfully be directed for their payment, our statute differing in this respect from the Thellusson Act in England: Lutz's Estate, 18 Phila. 114; 20 Phila. 89. These payments from income obviously enhance the principal, and would represent an investment of income, the payment to the beneficiaries being postponed until the stock should be full paid, or perhaps for eleven years, and although, in some cases, perhaps in the present, this course might be deemed beneficial, it is, nevertheless, the very thing which the act was intended to prevent. There are cases, indeed, which justify a temporary withdrawal of a reasonable amount of income, in the interests of prudent management, to provide for possible losses and to maintain the regular payment of an annuity, such as in Eberly's Appeal, 110 Pa. 95, and, in the most recent case, Dunn's Estate, 26 Dist. R. 656; but in none of these cases was there involved any ultimate accumulation or any permanent addition to the *corpus*.

As we conclude that the direction to capitalize the income is invalid, the further question arises, what is its effect upon the trust of the entire residuary estate? As to this, it is clear that the manifest intention of the testator was to give his residuary estate to his four sons, but to postpone the payment of the gift until the stock should mature, or perhaps for eleven years, when the stocks would, if not matured, approach maturity by the accumulation of income. Contemplating that, in the *interim*, one or more of his sons might die, he provided a substitutionary gift to their issue, and also provided that the income and principal should be paid to his sons without liability for their debts, etc.

It is axiomatic that a trust in equity continues so long, but only so long, as its purpose remains unfilfilled, and, as was aptly said by Thayer, P. J.: "A trust created for a special purpose, and evincing no clear intent to continue it for any other purpose, terminates when the purpose has been accomplished and nothing remains for the trust to act upon:" Rea *v.* Girard Life Ins. Co., 17 Phila. 357; to which may be added Jack's Estate, 17 Dist. R. 491, and Harrar's Estate, 244 Pa. 542. *A fortiori*, is this true when the special purpose of the trust is forbidden by statute. This is not the case where the failure or accomplishment of the trust is only partial, as in Forney's Estate,

2 D. & C.

161 Pa. 209; Denis's Estate, 201 Pa. 616; Cozens's Estate, 13 Dist. R. 49, and like cases; for here the manifest purpose of the testator was to enhance the value of the *corpus* by the addition of income for a series of years. The substitutionary gift to issue, in case of the death of any of his sons, is not sufficient to keep the trust alive, the point being similar to that decided in Wyllner's Estate, 24 Dist. R. 780, 65 Pa. Superior Ct. 396, and Disston's Estate, 25 Dist. R. 1061, 257 Pa. 537.

As, therefore, the direction to accumulate is invalid, the framework of the entire trust of the residuary estate is gone and the trust collapses. It is immaterial whether the four children take the estate as legatees free of the trust or as next of kin under the intestate laws, for they are both; and it seems clear that the final provision for payment to the sons free from liability for their debts falls with the trust itself: Hays *v.* Viehmeier, 265 Pa. 268. The residue of the estate, therefore, both principal and interest, should have been awarded to the four sons.

The exceptions are sustained, and counsel will prepare a schedule of distribution in accordance with this opinion and submit it to the auditing judge for approval.

HENDERSON, J., did not sit.