## Fidelity-Philadelphia Trust Company, Trustee, Appellant, v. Klinger.

Argued October 1, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Thomas A. Galbally,* with him *John J. Sullivan,* for appellant.

*George Ovington, Jr.,* for appellee.

OPINION BY RHODES, P. J., March 8, 1948:

This is an action in ejectment. The plaintiff is trustee under a will, and seeks possession of premises occupied by the defendant who is testator's son. The appeal involves the construction of the will in order to determine the right of defendant to continue living in the premises after the death of testator's widow.

The second paragraph of the last will and testament of Frederick W. Klinger, disposing of these premises, provides in part as follows: "When the Seventh Street residence, shall cease to be held for my wife and son (that is upon her death, remarriage or abandonment of it, or upon his death or abandonment of it, whichever of all these events shall first happen) my Executor may

sell it at any time within two years after it shall cease to be so held, and shall turn the proceeds over to my Trustee. If he shall not sell it in two years, my Trustee shall assume control of said house, and hold it as part of my residuary estate."

When testator wrote his will, in 1906, Jeremiah Sullivan Klinger, his son, the defendant, was a minor. Testator's widow and their son, the defendant, occupied the premises from the time of testator's death in 1906 until January 26, 1944, when the widow died. Defendant remained in possession of the premises after his mother's death, and on October 9, 1945, he was given notice by the plaintiff trustee to vacate. Failing in its efforts to thus acquire possession, plaintiff instituted this action in ejectment. The court below held that the will gave defendant the right to remain in possession of the premises, and entered judgment on the pleadings for defendant. Plaintiff has appealed.

Our courts, in construing wills, are guided by certain recognized and well settled principles. For instance, it is a cardinal rule that the actual intent of the testator must prevail when it can be ascertained from the language of the will. *Keefer Estate*, 353 Pa. 281, 283, 45 A. 2d 31. Regard must be had to the whole scheme of the will. *Lefebvre v. D'Arcy*, 236 Pa. 235, 238, 84 A. 765; *Fink et al. v. Stein*, 158 Pa. Superior Ct. 464, 468, 45 A. 2d 249. Likewise, a will must be read in the ordinary and grammatical sense of the words employed, unless some obvious absurdity or some repugnance or inconsistency with the declared intention of the testator as extracted from the whole will should follow from so reading it. *Riegel et al. v. Oliver et al.*, 352 Pa. 244, 247, 42 A. 2d 602. The question, in construing or expounding a will, is not what the testator may have meant but what is the meaning of the words actually used. *Myers Estate*, 351 Pa. 472, 474, 41 A. 2d 570; *Conner's Estate*, 346 Pa. 271, 273, 29 A. 2d 514; *Tombs Estate*, 155 Pa. Superior

Ct. 605, 609, 39 A. 2d 367; *Loughran's Estate*, 144 Pa. Superior Ct. 88, 92, 18 A. 2d 676.

We think that the testator, in that part of the will quoted above relating to the Seventh Street property, used words which, if read in their ordinary and grammatical sense, gave defendant the right to occupy the premises after his mother's death. The use of the conjunction "and" in the phrase "held for my wife and son" significantly indicates that each should have an equal right to occupy the premises.

We agree with the court below that the parenthetical phrase relating to five events—(1) death, (2) remarriage, or (3) abandonment of the residence by the widow; or (4) death, or (5) abandonment by the son—must be interpreted so as to give defendant the right to continue to occupy the premises after his mother's death. The phrase "whichever of all these events shall first happen" must refer to the occurrence of one of the three in the case of the wife, or one of the two in the case of defendant. Appellant's interpretation, that the phrase "whichever of all these events shall first happen" means whichever of all five events first occurs, cannot be adopted. To do so in the present case would render the entire phrase "or upon his [the son's] death or abandonment of it" idle and nugatory. A construction is always to be avoided which renders any part of a will mere surplusage. *Calder's Estate*, 343 Pa. 30, 37, 38, 21 A. 2d 907; *Parkin Estate*, 157 Pa. Superior Ct. 476, 480, 43 A. 2d 595. Certainly the testator's language is not subject to the construction that his widow's right of residence would have been lost upon the death of defendant prior to her death. Everything in the will points to a contrary intention. We hold, in the same manner, defendant's right of continued residence is not lost by reason of the mother's prior death.

Nor do we think that other paragraphs of the will require a different construction of the paragraph relating specifically to the Seventh Street residence. Ap-

pellant relies especially upon the following part of the fourth paragraph of the will: "Fourth:—I urge upon my wife to continue to live with our son at #1216 North Seventh Street, our home, and have framed the provisions regarding her with her welfare in mind. If she should ever abandon it, I suggest to my Executor that an immediate sale would be for the best interest of my estate. . . ." At the time testator wrote his will, defendant was a child and would naturally be taken by his mother to live with her if she abandoned the property. This paragraph, therefore, is not directed at the situation where the mother dies before the son, and consequently we must look to the provision in the second paragraph of the will dealing specifically with the occupancy of the Seventh Street residence.

In the seventh paragraph testator bequeaths $500 to "each of my children," and further states: "I counsel each of my children to use this sum towards buying a home for himself or herself." As to the defendant, it was provided that the $500 should be retained by the executor as testamentary guardian until defendant reached the age of twenty-five years. The gift of a sum to each child for the purpose of buying a home is not necessarily inconsistent with the right of this defendant to remain in the house following his mother's death. Defendant was not to receive his $500 to be used in buying a home until he was twenty-five years old; and his mother's death prior to his reaching twenty-five would not deprive him of his right of residence in this property. There is no indication that testator intended any different result where the mother died after defendant reached twenty-five.

As we construe the will, testator intended that the Seventh Street residence was to be used as the home for his widow and son so long as either desired to remain there, and that the death of the former had no effect upon the right of the latter.

Judgment of the court below is affirmed.